UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| CM CONSTRUCTION & EXCAVATION LLC | CASE NO.  6:19-CV-00048 LEAD |
| VERSUS | JUDGE SUMMERHAYS |
| WORLEY SERVICES INC ET AL | MAGISTRATE JUDGE HANNA |

### REPORT AND RECOMMENDATION

Before the Court is the Motion to Dismiss or Transfer for Improper Venue filed on behalf of Defendant, Worley Services, Inc. ("Worley"), in which Worley seeks dismissal of this suit for improper venue or, alternatively, a transfer to the United States District Court for the Southern District of Texas. (Rec. Doc. 10). Plaintiff, CM Construction & Excavation, LLC ("CM Construction"), opposes the Motion (Rec. Doc. 30[1]), and Worley has replied (Rec. Doc. 25). The motion was referred to the undersigned magistrate judge for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of this Court.  Considering the evidence, the law, and the arguments of the parties, and for

---

[1] CM Construction filed an Amended Opposition (Rec. Doc. 30) in place of its originally filed Opposition at Rec. Doc. 24. Worley objected to CM Construction's Opposition as untimely; however, CM Construction filed its original Opposition timely on March 21, 2019, twenty-one days after service of Worley's Motion on February 28, 2019. See Rec. Doc. 24.

the reasons fully explained below, it is recommended that Worley's Motion be GRANTED and that this suit be transferred to the Southern District of Texas.

## Factual Background

In June 2017, Worley entered into a contract with the United States Corps of Engineers to raise the Placement Area No. 13 Containment Dike along the Corpus Christi Ship Channel in Nueces County, Texas. Worley secured a payment and performance bond for the project from SureTec Insurance Company. (Rec. Doc. 1-2). Worley subcontracted with CM Construction to load and haul materials for the project. (Rec. Doc. 1-1).

CM Construction originally filed suit in the Fifteenth Judicial District in Lafayette Parish, Louisiana, seeking to recover amounts which Worley allegedly owed under the subcontract. Worley removed that suit to this court. (6:19-cv-000218, Rec. Doc. 1-3). After filing the State Court case, CM Construction filed the Complaint in the instant matter likewise seeking to recover amounts allegedly owed under the subcontract pursuant to the Miller Act (40 U.S.C. §3131 *et seq*.). The two cases were subsequently consolidated. (Rec. Doc. 20).

Worley has now moved to dismiss this case, or alternatively to transfer it to the Southern District of Texas. Worley maintains, and CM Construction does not dispute, that the work for Placement Area 13 was performed in Nueces County, Texas, within the boundaries of the Southern District of Texas. Neither do the parties

dispute that a representative of each entity signed a two-page Agreement wherein they agreed: "Place of jurisdiction is Lafayette, Louisiana." (Rec. Doc. 1-1).

## Applicable Law

CM Construction filed this lawsuit pursuant to the Miller Act, which provides a mechanism for subcontractors of labor and/or materials to recover unpaid amounts from contractors who have been awarded certain public contracts. 40 U.S.C. §3131 *et seq*. With regard to venue for an aggrieved subcontractor's action against the contractor, the Miller Act provides: "A civil action brought under this subsection must be brought…in the United States District Court for any district in which the contract was to be performed and executed, regardless of the amount in controversy." 40 U.S.C. §3133(b)(3).

The Miller Act's venue provision was enacted for the special protection of defendants. *In re Fireman's Fund Ins. Companies, Inc.,* 588 F.2d 93, 95 (5th Cir. 1979), citing *Electronic & Missile Facilities, Inc. v. United States*, 306 F.2d 554 (5th Cir. 1962), Rev'd on other grounds, sub nom. *Moseley v. Electronic & Missile Facilities, Inc.,* 374 U.S. 167 (1963). Nonetheless, the venue provision is one of convenience for the parties and is subject to variation by agreement of the parties. *Fireman's Fund*, 306 F.2d at 95. A valid forum selection clause "represents the parties' agreement as to the most proper forum." *Atlantic Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas,* 571 U.S. 49, 63 (2013), citing *Stewart*

3

*Organization, Inc. v. Ricoh Corp*., 487 U.S. 22, 31 (1988). In *Fireman's Fund,* the Fifth Circuit held that, even despite the Miller Act's venue provision, which, at that time provided that venue was proper in "any district in which the contract was to be performed and executed *and not elsewhere,*[2]" the parties were free to agree to a forum otherwise. *Id*.

28 U.S.C. §1404, which addresses change of venue based on convenience, provides the mechanism for the enforcement of forum selection causes. *Atlantic Marine*, 571 U.S. at 60 (2013). When a motion to transfer venue involves a valid mandatory forum selection clause, the court is to conduct a modified analysis under §1404(a), wherein the forum selection clause is to be 'given controlling weight in all but the most exceptional cases.' *Id*., citing *Stewart Organization, Inc. v. Ricoh Corp*., 487 U.S. 22, 33 (1988); *Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 767 (5th Cir. 2016).

The Fifth Circuit summarized the *Atlantic Marine* modified §1404(a) analysis to be applied in cases involving a valid mandatory forum selection clause as follows:

> First, the plaintiff's choice of forum "merits no weight"; instead he has the burden of establishing that §1404(a) transfer or FNC dismissal is unwarranted. And second, the court should not consider the private-interest factors: Because the parties have contracted for a specific forum, they "waive the right to challenge their preselected forum as inconvenient...." Instead, the court should consider *only*

---

[2] Emphasis by this Court to indicate the verbiage which has since been removed from §3133(b)(3).

4

public-interest factors. "Because those factors will rarely defeat a transfer motion, the practical result is that [FSCs] should control except in unusual cases." Cases in which the public-interest factors are sufficiently strong to outweigh a valid FSC "will not be common."

*Weber*, 811 F.3d at 767 (5th Cir. 2016), citing *Atlantic Marine*, 571 U.S. at 63-64.

The foregoing *Atlantic Marine* analysis applies only to forum selection clauses which are mandatory, as opposed to permissive:

> A mandatory FSC [forum selection clause] affirmatively requires that litigation arising from the contract be carried out in a given forum. By contrast, a permissive FSC is only a contractual waiver of personal-jurisdiction and venue objections if litigation is commenced in the specified forum. Only mandatory clauses justify transfer or dismissal. An FSC is mandatory only if it contains clear language specifying that litigation *must* occur in the specified forum-and language merely indicating that the courts of a particular place "shall have jurisdiction" (or similar) is insufficient to make an FSC mandatory.

*Weber,* 811 F.3d at 768, citing *Caldas & Sons, Inc. v. Willingham,* 17 F.3d 123, 127–28 (5th Cir.1994) and *K & V Sci. Co. v. Bayerische Motoren Werke Aktiengesellschaft ("BMW"),* 314 F.3d 494, 500 (10th Cir.2002).

If the forum selection clause is permissive, the court should apply the traditional §1404(a) analysis. See *Waste Mgmt. of Louisiana, L.L.C. v. Jefferson Par. ex rel. Jefferson Par. Council*, 594 Fed.Appx. 820, 821 (5th Cir. 2014). Thus, the initial inquiry is whether the forum selection clause in the Worley—CM Construction contract is mandatory or permissive.

**Whether the Subcontract Forum Selection Clause is Mandatory or Permissive**

The Court must determine whether the forum selection clause at issue—*Place of jurisdiction is Lafayette, Louisiana.*—"contains clear language specifying that litigation *must* occur in the specified forum." *Weber*, 811 F.3d at 768. Stated differently, a mandatory forum selection clause clearly implicates the parties' intent to litigate exclusively in a particular court.

> For a forum selection clause to be exclusive, it must go beyond establishing that a particular forum will have jurisdiction and must clearly demonstrate the parties' intent to make that jurisdiction exclusive. It is important to distinguish between jurisdiction and venue when interpreting such clauses. Although it is not necessary for such a clause to use the word 'venue' or 'forum,' it must do more than establish that one forum will have jurisdiction.

*City of New Orleans v. Mun. Admin. Servs., Inc.,* 376 F.3d 501, 504 (5th Cir. 2004), citing *Keaty v. Freeport Indonesia, Inc.,* 503 F.2d 955 (5th Cir.1974).

In *Keaty v. Freeport Indonesia, Inc.*, the Fifth Circuit considered the phrase: "This agreement shall be construed and enforceable according to the law of the State of New York and the parties submit to the jurisdiction of the courts of New York." *Keaty v. Freeport Indonesia, Inc.,* 503 F.2d 955, 956 (5th Cir. 1974). In deeming the language permissive, the court reasoned that the language was subject to two opposing, yet reasonable interpretations, one of which was that the defendant did not intend to waive his right to litigate elsewhere. *Id*. Further persuasive was the court's obligation to construe the challenged provision against the drafting party, such that its urged interpretation was given less weight. *Id*.

In *Caldas & Sons Inc. v. Willingham*, the Fifth Circuit considered the clause, "[t]he laws and courts of Zurich are applicable," and found it to be permissive, citing *Keaty, supra*, and a Ninth Circuit opinion[3] for the proposition that even the use of the word, "shall," is not necessarily sufficient to render a forum selection clause mandatory. *Caldas*, 17 F.3d at 127. The court reasoned that, although the clause certainly evidenced the parties' consent to personal jurisdiction of the Zurich court, "the language [did] not clearly indicate that the parties intended to declare Zurich to be the exclusive forum for the adjudication of disputes arising out of the contract." *Id*.

Having considered the Worley—CM Construction forum selection clause in the context of Fifth Circuit interpretation, this Court finds the forum selection clause to be permissive. "Place of jurisdiction is Lafayette, Louisiana," is similar to the clause, "[t]he laws and courts of Zurich are applicable," as discussed in *Caldas, supra*, in that it does not unambiguously exclude other forums.

Both Worley and CM Construction would have the Court consider evidence of the parties' intent to determine whether the clause at issue is mandatory or permissive.[4] The Court lacks the authority to look beyond the four corners of the

---

[3]   *Hunt Wesson Foods, Inc. v. Supreme Oil Co.*, 817 F.2d 75 (9th Cir.1987).
[4]   Worley contends that the forum clause is ambiguous, because it governs the parties' agreement as to "jurisdiction," rather than "venue," and that, as such, the parties intended that claims under the contract would be brought in Louisiana state court and thereby

7

contract to determine the parties' intent unless the language is ambiguous. *Taita Chem. Co. v. Westlake Styrene Corp.,* 246 F.3d 377, 386 (5th Cir. 2001); La. C.C. art. 2046. The facts that both parties urge the Court to look beyond the four corners of the contract in order to determine the parties' intent, and that both pose reasonable interpretations of the one-sentence clause, further support the Court's finding that the clause is permissive.[5] See *Keaty*, 503 F.2d at 956.

### Whether the case should be transferred to the Southern District of Texas

Having determined that the Worley—CM Construction forum selection clause is permissive, the Court must conduct the traditional *forum non conveniens* analysis mandated by §1404(a). *Waste Mgmt.*, 594 Fed.Appx. at 821. First, "the court must determine whether there exists an alternative forum." *DTEX, LLC v. BBVA Bancomer, S.A.,* 508 F.3d 785, 794 (5th Cir. 2007), citing *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 254 (1981). In this case, the Southern District of Texas

---

deprive the federal court of its exclusive jurisdiction under the Miller Act. (Rec. Doc. 10-2 at 4-5). Relying upon CM Construction's statement in the companion matter filed in state court in which it pled, "The Agreement provides that venue and jurisdiction is proper in Lafayette, Louisiana," Worley maintains that this "admission" by CM Construction, in conjunction with the fact that CM Construction originally filed suit in Louisiana state court, manifests at least one of the party's intent to litigate in state court, and thereby divest the federal court of jurisdiction. (Rec. Doc. 10-2 at 5). CM Construction contends that the signatories to the contract, Charles Allen Worley and Mitchell Studebaker, were non-attorneys who were "agreeing on where they would go to court if either of them had to file suit." (Rec. Doc. 27-1 at 6).

5 The parties did not submit evidence of who drafted the Agreement at Rec. Doc. 1-1, such that the Court is unable to apply the rule of contract interpretation discussed in *Keaty* (that, when faced with ambiguities, the court is to interpret the contract against the drafter).

constitutes an alternative forum pursuant to 40 U.S.C. §1333(b)(3), as the district encompassing the location of the project in Nueces County, Texas (where "the contract was to be performed and executed").

"Second, the court must determine which forum is best suited to the litigation, considering whether 'certain private and public interest factors weigh in favor of dismissal.'" *DTEX,* 508 F.3d at 794 citing *Piper Aircraft,* 454 U.S. at 255, and *McLennan v. Am. Eurocopter Corp,* 245 F.3d 403, 424 (5th Cir. 2001). "The court must bear in mind that 'the ultimate inquiry is where trial will best serve the convenience of the parties and the interests of justice.'" *DTEX,* 508 F.3d at 794, citing *In re Air Crash,* 821 F.2d 1147, 1162 (5th Cir. 1989), (*en banc*), judgment vacated on other grounds, 49 U.S. 1032 (1989), (quoting *Koster v. Am. Lumbermens Mutual Casualty Co.,* 330 U.S. 518, 527 (1947)).

> The "private interest" factors include:
>
> (i) the relative ease of access to sources of proof; (ii) availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; (iii) possibility of view of [the] premises, if view would be appropriate to the action; (iv) all other practical problems that make trial of a case easy, expeditious and inexpensive ... enforceability of judgment[; and whether] the plaintiff [has sought to] "vex," "harass," or "oppress" the defendant.
>
> The "public interest" factors include:
>
> (i) the administrative difficulties flowing from court congestion; (ii) the local interest in having localized controversies resolved at home; (iii) the interest in having the trial of a diversity case in a forum that is familiar with the law that must govern the action; (iv) the avoidance of

9

unnecessary problems in conflicts of law, or in application of foreign law; and (v) the unfairness of burdening citizens in an unrelated forum with jury duty.

*DTEX,* 508 F.3d at 794, citing *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508 (1947)*; In re Air Crash Disaster Near New Orleans, La.,* 821 F.2d at 1162-63; and *Dickson Marine, Inc. v. Panalpina, Inc.,* 179 F.3d 331, 342 (5th Cir.1999).

"The defendant carries the burden of persuading the court that a lawsuit should be dismissed on *forum non conveniens* grounds." *DTEX,* 508 F.3d at 795, citing *In re Ford Motor Co., Bridgestone/Firestone North American Tire,* 344 F.3d 648, 652 (7th Cir.2003). "Ordinarily a strong favorable presumption is applied to the plaintiff's choice of forum. '[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.'" *DTEX,* 508 F.3d at 795 *Gulf Oil Corp. v. Gilbert,* 330 U.S. at 508. "When the movant demonstrates that the transferee venue is clearly more convenient, however, it has shown good cause and the district court should therefore grant the transfer." *In re Volkswagen of Am., Inc.,* 545 F.3d 304, 315 (5th Cir. 2008).

It is undisputed that the work underlying the Worley—CM Construction contract, the loading and hauling of materials, occurred in Nueces County, Texas. (Doc. 1-1). Worley, the general contractor over the Texas project, is a Missouri corporation authorized to do business in Louisiana with its principal place of business in Poplar Bluff, Missouri. (Rec. Doc. 13, ¶2; 6:19-cv-00218 Rec. Doc. 9; ¶1). CM Construction is a Louisiana Limited Liability Company with its principal

place of business in Lafayette, Louisiana. (Rec. Doc. ¶1). Witnesses and evidence relative to CM Construction's claim for allegedly unpaid amounts could presumably be found in either Nueces County or Lafayette. To the extent Worley intends to defend this suit on the grounds of CM Construction's fault[6] and/or issues arising out of the Prime Contract,[7] witnesses and evidence relative to the actual construction project, including the site itself, are in Nueces County. Therefore, private interest factors militate in favor of transfer to the Southern District of Texas.

With regard to public interest factors, both this Court and the Southern District of Texas are obliged to analyze CM Construction's claims under the Miller Act. Thus, uniform application of this federal legislation alleviates any concerns regarding conflicts of laws. Further, the citizens of Nueces County have a greater interest in the outcome of the project located on their own turf than do the citizens of Lafayette, whose interest arises only by virtue of CM Construction's citizenship. Hence, public interest factors likewise weigh in favor of transfer.

Perhaps the most compelling consideration in this case is the Miller Act itself, pursuant to which CM Construction brought this suit. "The venue provision of the Miller Act is a restrictive one, enacted for the benefit of defendants, not plaintiffs." *U. S. For Use & Ben. of Harvey Gulf Int'l Marine, Inc. v. Maryland Cas. Co.,* 573

---

[6] See Worley's Answer at Rec. Doc. 13, ¶7.
[7] See Worley's Answer at Rec. Doc. 13, ¶14.

11

F.2d 245, 248 (5th Cir. 1978), citing *Texas Construction Company v. United States*, 236 F.2d 138, 143 (5th Cir. 1956). As discussed by the Fifth Circuit in *U.S. Fidelity & Guaranty Co. v. Hendry Corp.,* although the statute does not mandate a single action by all aggrieved subcontractors, the Miller Act encourages consolidation of actions in "one or at most a small number of districts," in order to "maximize convenience to defendants." *U. S. Fid. & Guar. Co. v. Hendry Corp.,* 391 F.2d 13, 19 (5th Cir. 1968).

Worley advised, and the Court confirmed, that at least two other Miller Act claims have been asserted against Worley arising out of the same project and seeking reimbursement under the same SureTec bond: *United States of America for the Use & Benefit of TTJ Rentals, Inc. v. SureTec Insurance Co.*, No. 2:19-cv-00073 (Mar. 6, 2019, S.D. Tex.); *United States of America for the Use of Luhr Bros., Inc. v. Worley Services, Inc.*, No. 2:19-cv-00074 (Mar. 6, 2019, S.D. Tex). To allow the instant matter to proceed in this court, while other suits seeking reimbursement from the same SureTec bond are pending in a parallel jurisdiction, risks the possibility of inconsistent and inequitable results which the Miller Act seeks to avoid. Consideration of private and public interest factors, in conjunction with the Miller Act's defense-oriented venue provision, upsets the balance of plaintiff's choice of forum in favor of transferring the case to the Southern District of Texas, where the

12

project was located and where two other cases seeking reimbursement from the SureTec bond are pending.

## Conclusion

For the reasons discussed herein, it is recommended that Worley's Motion to Dismiss or Transfer for Improper Venue (Rec. Doc. 10) be granted and that this case be transferred to the Southern District of Texas.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1).

THUS DONE in Chambers, Lafayette, Louisiana on this 29th day of April, 2019.

_____
PATRICK J. HANNA